## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **STEVEN A. ARMATAS, ESQ**.<br>7690 Bucknell Circle N.W.<br>North Canton, Ohio 44720<br><br>*PLAINTIFF,*<br><br>*vs.*<br><br>**SCOTT MICHAEL HAWS,**<br>  in his Individual Capacity,<br>2940 Cloverhurst Street<br>North Canton, Ohio 44721,<br><br>*-and-*<br><br>**ALBERT P. LENO II,**<br>  in his Individual Capacity,<br>c/o Plain Township Offices<br>2600 Easton Street N.E.<br>North Canton, Ohio 44721<br><br>*-and-*<br><br>**JOHN A. SABO,**<br>  in his Individual Capacity,<br>c/o Plain Township Offices<br>2600 Easton Street N.E.<br>North Canton, Ohio 44721<br><br>*-and-*<br><br>**THOMAS FERRARA,**<br>  in his Individual Capacity,<br>c/o Plain Township Offices<br>2600 Easton Street N.E.<br>North Canton, Ohio 44721,<br><br><br>  *DEFENDANTS* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO:<br><br><br>JUDGE:<br><br><br><br>**CIVIL COMPLAINT FOR :**<br><br>  **1.  FRAUD;**<br><br>  **2.  VIOLATION OF FEDERAL<br>      CIVIL RIGHTS;**<br><br>  **3.  CIVIL CONSPIRACY;**<br><br>  **4.  UNCONSTITUTIONAL<br>      PASSAGE OF A BILL OF<br>      ATTAINDER;**<br><br>  **5.  DECLARATORY JUDGMENT;**<br>      *and*<br><br>  **6.  PUNITIVE DAMAGES**<br><br><br><br>  <u>**NOTICE OF JURY DEMAND**</u> |

NOW COMES PLAINTIFF, Steven A. Armatas, by and through undersigned legal counsel, who alleges and complains as follows:

## PARTIES

1.       Plaintiff is an individual and resident of Plain Township, Ohio who owns and maintains a home located at 7690 Bucknell Circle N.W., North Canton, Ohio 44720 (the "Armatas Residence").

2.       Defendants Scott M. Haws, Albert P. Leno II, and John A. Sabo are duly elected members of the Board of Trustees of Plain Township, comprise the entire board,  and are all individuals employed within and who maintain an office in Plain Township, County of Stark, in the State of Ohio, but are being sued here in their individual capacity.

3.       Defendant Thomas Ferrara is the duly appointed Zoning Director for Plain Township and an individual who is employed within and maintains an office in Plain Township, County of Stark, in the State of Ohio, but is being sued here in his individual capacity.

## FACTS

### *The initial 2016 complaint lodged by Plaintiff with the Zoning Office*

4.        Article VI, Section 602.10 (the "Hedge Ordinance" or "§602.10") of the Plain Township Zoning Resolution (the "PTZR") provides in pertinent part that all "fences, walls, or hedges in Plain Township…must meet zoning regulations with regards to height… In all Residential Districts, they…may not exceed 8 feet in height in or along the edge of a rear or side yard.  They may be placed up to the property line."

5.     Section 602.10 has been part of the PTZR since at least 1990, which is prior to the time Plaintiff purchased his home and before any trees or shrubs were planted by the residents of the neighboring property.

6.     At approximately 11 a.m. on Thursday, September 8, 2016, Plaintiff, who resides at 7690 Bucknell Circle N.W.; North Canton, Ohio (the "Armatas Property"), personally visited the Administrative Offices of Plain Township and spoke with Zoning Director Thomas Ferrara and Ms. Vicki L. Lloyd, Zoning Assistant for Plain Township.

7.     Plaintiff identified himself as an attorney and resident of Plain Township and notified Mr. Ferrara and Ms. Lloyd about a row of densely-packed, 20-foot high "evergreen" and/or "Christmas trees," which had been intentionally planted and cultivated by his neighbors, George and Cindy Koberlein, along the rear property line separating the Armatas Property from the adjoining Koberlein Residence.

8.     Plaintiff then informed Mr. Ferrara that he believed these "Christmas trees" constituted a violation of the Hedge Ordinance because such artificial barrier constituted a "fence, wall or hedge" along a boundary in excess of 8 feet tall.

9.     Director Ferrara looked askance at Plaintiff and told him the ordinance in question "does not say 'hedges' in it" and therefore was not applicable to his situation. Steven Armatas assured Director Ferrara that the ordinance did indeed include the word "hedges" and presented Mr. Ferrara with a copy of the regulation which Plaintiff had brought with him.

10.     Mr. Ferrara examined the document and became noticeably irked about not knowing the word "hedges" was part of §602.10. He then proceeded for approximately one minute to leaf through several pages of a large three-ring binder that was sitting on his desk.

3

11.    After perusing such binder, Director Ferrara returned to the counter and tersely informed Mr. Armatas: "I'm not going to do anything about this." When asked "why?" by Plaintiff, Mr. Ferrara indicated he felt "trees and hedges" to be different things, but cited no specific authority for his conclusion.

12.    At no time subsequent did Mr. Ferrara ever come out to or visit the properties to personally examine and/or take photographs of the hedges.

13.    Plaintiff then asked Director Ferrara if there was any procedure available to appeal his "decision" not to act to another body or person within Plain Township.  At such point, Mr. Ferrara represented to Plaintiff that neither the Plain Township Zoning Commission (the "Zoning Commission ") nor the Board of  Zoning Appeals (the "BZA") would have jurisdiction over the matter since no permit or variance was being sought, but that Plaintiff "could take the matter up with the [Plain Township] Board [of Trustees]" if he wished.

14.    Plaintiff then inquired if Director Ferrara would be kind enough to have a Board member contact Plaintiff to discuss the situation.  Mr. Ferrara adamantly refused saying he was "not in the habit of giving orders to [his] bosses," and that Mr. Armatas should contact the Board directly if he wished to discuss the problem.

15.    Plaintiff then asked Mr. Ferrara why he was being so difficult.  Mr. Ferrara responded that he was not being difficult, but was simply not in a position to give orders to his bosses.

16.    Sensing a growing feeling of acrimony enveloping the room, Ms. Lloyd quickly handed Mr. Armatas the most recent edition of the Plain Township News which prominently displayed the names, telephone numbers, and e-mail addresses of all three members of the Plain

Township Board of Trustees.  Plaintiff thanked Ms. Lloyd for the newsletter and departed the premises.

17.     Later that afternoon, Mr. Armatas placed a telephone call to Trustee Scott Haws and left a detailed voicemail message regarding Plaintiff's interpretation of the Hedge Ordinance and summarizing his earlier conversation with Director Ferrara.

18.     On the next day, Friday, September 9, 2016, Trustee Haws left a lengthy voicemail message on Plaintiff's office telephone indicating he had briefly visited the Armatas Property earlier that day, looked at the boundary line in question, and concluded that:

> "the legal interpretation that our zoning office has commented on is factually correct; those trees do have a right to be on the other property, to be on the owner's ground; they do not meet the criteria of a bush or a hedge or a wall or a fence…"

19.     Trustee Haws provided no citations or references for his conclusion and proceeded to inform Plaintiff that the matter could now *only* be resolved between the neighboring homeowners by "mediation, small claims court, or civil litigation," because there was no further avenue of appeal through Plain Township.

*Plaintiff files his 2016 Writ of Mandamus with the 5th District Court of Appeals.*

20.     Relying upon the representation of both Director Ferrara and Trustee Haws that he could not appeal the "hedge decision" through the Township, Plaintiff instead, on or about October 14, 2016, filed an Original Action for Writ of Mandamus (the "Writ Action") with the Ohio 5th District Court of Appeals, against Defendants Haws, Leno, and Sabo, in their official capacity as duly-elected Members of the Board of Trustees of Plain Township, Ohio; and Defendant  Ferrara in his official capacity as Plain Township Zoning Director.

21.     In his Writ of Mandamus action, Plaintiff argued the evergreens along the Koberlein Residence border clearly constituted a "hedge," and, because they were well over 8

5

feet in height, violated the Hedge Ordinance. Plaintiff therefore sought a Writ from the Court ordering the Board and Mr. Ferrara to enforce the Ordinance and oversee the prompt removal of the infringing plant life with all due haste, because it has caused significant damage to Plaintiff's property over the years.

22.     In doing so, Plaintiff provided the Court with a host of dictionary definitions of the word "hedge" demonstrating the term is actually used to describe a variety of plants; including trees, shrubs, and bushes, that are planted close enough together to form an artificial boundary, typically between two properties. Hence, Plaintiff argued a "hedge" can be anything from a row of evergreen trees, to bushes, shrubs, bamboo shoots, or even giant tomato plants; as long as its components are in sufficient proximity to form a type of barrier.

23.     Plaintiff further highlighted in his briefing that what makes both evergreen trees and shrubs particularly effective as "hedges" is that they (i) can be planted in close proximity to one another; (ii) never lose their leaves or needles; (iii) preserve a year-round blocked view; (iv) do not let it much light between the stems; and (v) form an effective, "bristle-like" barricade between properties that makes it difficult for someone to walk through.

24.     For whatever reason, up until such time, the word "hedge" was never defined in the PTZR. Plaintiff thus argued in his Writ Action that when a particular term is not defined in a statute or ordinance, both the Ohio Supreme Court and the United States Supreme Court have determined it is appropriate to turn to the common dictionary definition thereof for interpretive purposes.

25.     Conversely, none of the Defendants ever offered any dictionary definitions, botanical text citations, authority or testimony that a "hedge" always means and is confined to the parameters of being a "shrub," most likely because no such authority exists.

6

26.     As will be described below, Defendants chose to document that a "hedge" always means "shrub" by subsequenlty illegally, unconstitutionally, inappropriately, and self-servingly amending their own PTZR to say so, without giving Plaintiff any direct notice of their actions. It is the *real* purpose of such amendment and the method by which it was adopted that is the subject of this lawsuit.

### *The Writ Action is Decided by the Fifth District Court of Appeals.*

27.     The Writ Action filed by Plaintiff sought to have the Ohio 5th District Court of Appeals compel Plain Township to enforce the Hedge Ordinance with all due haste. Based on information and belief, sometime after being served with notice of the Writ Action, the Plain Township Board of Trustees (or someone acting on their behalf) contacted Attorney James Mathews from the law firm of Baker, Dublikar, Beck, Wiley & Mathews in North Canton, Ohio to engage him as legal counsel to defend against the complaint.

28.     On or about November 18, 2016, the Defendants filed a Motion to Dismiss the Writ Action on the grounds Plaintiff had failed to exhaust his administrative remedies through the Township before seeking judicial intervention.

29.     In so arguing, Defendants contended that despite Trustee Haws' and Director Ferrara's unambiguous statements to the contrary, Plaintiff did indeed have a right to appeal the Zoning Director's decision to the BZA, but had failed to do so, thus forfeiting his right to seek mandamus.

30.     The 5th District Court of Appeals agreed with Defendants regarding the remedy issue and, on or about May 1, 2017, issued its Opinion dismissing Plaintiff's Writ solely because "[Steven Armatas] has or had an adequate remedy at law by way of utilizing the township's appellate process" based on the fact Plaintiff "provided this Court with a copy of Respondents'

appeal form," which "form does not limit the appellate process to denial of variances or permits."

31.      In its Opinion, the Ohio Fifth District Court of Appeals never reached nor discussed the issue of whether an evergreen or Christmas tree constitutes a "hedge" for purposes of §602.10 of the PTZR.

### *The Board of Trustees Attempts to Improperly Amend the Hedge Ordinance*

32.      Since Plain Township argued Plaintiff's own "failure to exhaust [his] administrative remedies" was the primary reason why his Writ Action should not be granted, Trustee Haws and Inspector Ferrara must, at some point, have realized and understood they had initially given Plaintiff false information regarding his appeal rights.

33.      Rather than admit they had given Plaintiff false information and subsequently allow him to submit his appeal to the BZA back in 2016, the Plain Township Board of Trustees arranged for the payment of over $12,000.00 in legal fees to Mr. Mathews' law firm to contest these matters.

34.      On or about June 13, 2017, Plaintiff filed a civil lawsuit, in the Stark County Court of Common Pleas for fraud against Trustee Haws and Inspector Ferrara, in their individual capacities, for falsely informing Plaintiff, on September 8, 2016 and September 9, 2016, that he had no other formal avenues of appeal to pursue through Plain Township regarding the decision of the Zoning Director not to take any action related to the Hedge Ordinance as applied to the Armatas Residence.

35.      On September 19, 2017, the Trial Court dismissed Plaintiff's claims pursuant to Civ. R. 12(B)(6), by holding:

"For purposes of evaluating Count II of Plaintiff's Complaint, the court accepts as true Plaintiff's allegation that defendants purposely and wantonly provided him

false information regarding his right to appeal their determination.  But even assuming they maliciously misrepresented the legal information given to him, Plaintiff's claim must still fail as a matter of law."

36.     Such dismissal was affirmed by the Ohio 5th District Court of Appeals on April 9, 2018, wherein the Appeals Court wrote in ¶16 of its ruling that "[e]ven assuming, *arguendo*, that [Plain Township] officials Ferrara and/or Haws, <u>maliciously or in bad faith</u>, misinformed appellant that he had no avenue of appeal through Plain Township, such statements constituted erroneous statements of law, upon which appellant was not entitled to rely [emphasis added]."

37.     As described below, during the course of the above-mentioned fraud action, Defendants attempted to amend the Hedge Ordinance for the purpose of preventing Plaintiff from prevailing in his lawsuit and/or pursuing any future administrative remedies and/or litigation against either the Township or Defendants personally for failing to enforce the original Hedge Ordinance and/or lying to Mr. Armatas about his lack of administrative remedies.

38.     These subsequent actions to amend the Ordinance constituted fraud, an unconstitutional deprivation of Plaintiff's property rights, the passage of a Bill of Attainder, and an improper civil conspiracy.

39.     Further, Defendants' conduct was manifestly outside the scope of their employment or official responsibilities as members of the Board of Trustees of Plain Township and Zoning Director for Plain Township, respectively.

40.     Further, Defendants (i) abused their discretion, (ii) took such actions to punish Plaintiff for bringing the Writ of Mandamus and related civil litigation against them, (iii) committed such acts to promote and protect their own personal interests, and (iv) acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

41.     Such improper conduct manifested itself over the course of three meetings of the Plain Township Board of Trustees and one meeting of the Zoning Commission held in the fall of 2017.

*The September 12, 2017 Board of Trustees Meeting*

42.     On September 12, 2017, at a regularly-scheduled meeting of the Plain Township Board of Trustees, Trustee Scott Haws introduced a proposed amendment to §602.10 ("Amendment #571-17") whereby definitions of the terms "hedge" and "shrub" would be added to the PTZR.  The amendment, in essence, served to change and limit the meaning of the word "hedge" from its commonly-accepted dictionary definition of being "a thick row of bushes <u>or small trees</u> planted as a small fence or boundary" to just being a "shrub."

43.     The relevant minutes from the September 12 meeting suggest the reason for the amendment was that while the:

> "words 'wall' and 'hedge' are clearly understood and applied, when using the plain and ordinary meaning of those words…the Board concludes, in its legislative judgment, that the inclusion of the specific definitions for the words 'wall' and 'hedge' as part of the Zoning Resolution may nevertheless aid in the application of Zoning Resolution."

No other reasons justifying the proposed amendment were entered into the record.

44.     Interestingly, what was ***not*** disclosed during the meeting was that: (i) the commonly-understood meaning of the word "hedge" encompassed far more plant examples than a mere shrub; (ii) a lawsuit had  been filed against the Board and its employees arising from this incident; and (iii) Trustee Haws and Director Ferrara had by then admitted in court filings that they had given Plainitff inaccurate information about his right to appeal their 2016 decision to the BZA.

45.     Regardless, the proposed amendment was passed by the Board of Trustees. In accordance with state law, the Board was required to certify the passage of Amendment #571-17 to the Plain Township Zoning Commission, which in turn was obligated to hold a public hearing, and within 30 days thereafter, issue its recommendation to  "approve," "deny" or "approve with modification" the proposed amendment.

*The October 14, 2017 Zoning Commission Meeting*

46.     On October 14, 2017, the Zoning Commission conducted a public hearing to consider the Board's proposed amendment to the Hedge Ordinance. Plaintiff never received a notice regarding this meeting, nor were any signs placed on or near the Koberlein property to indicate such a hearing had been scheduled.

47.     Plainitff only recently became aware that such Zoning Commission meeting actually took place, but has viewed the videotape of the session posted on Plain Township's website.

48.     At the meeting, cetain members of the Zoning Commission raised concerns over the underlined stated *versus* real reasons for the proposed zoning amendment. They also questioned why such amendment was necesary when the Board of Trustees had already expressed in their minutes that the words found in the Hedge Ordinance were clearly understood and applied using their plain and ordinary meaning. After some discussion, the Zoning Commission decided to **DENY** the Board of Trustees recommendation to adopt the amendment.

49.     More importantly; however, Defendant Ferrara is seen and heard on the videotape of such Zoning Commission meeting admitting in the course of two different exchanges that a row of trees or plants of any kind may constitute the formation of a "hedge."  Defendant Ferrara

is also clearly seen and heard on the videotape admitting that the sole purpose of the amendment to the Hedge Ordinance was to "stop the litigation" initiated by Plaintiff.

50.     Yet, despite such clear acknowledgment that Plaintiff was correct from the outset regarding his interpretation of the subject ordinance, and that the sole purpose of the amendment was to thwart the litigation that Plaintiff had personally brought against Trustee Haws and Mr. Ferrara, Mr. Ferrara and the Board facilitated the adoption of Amendment #571-17 several weeks later in order to advance their personal interests.

51.     The Zoning Commission videotape of October 14, 2017 also shows Mr. Ferrara stating, in essence, that Mr. Armatas is the only person to ever raise the issue of whether evergreen trees fall within the scope of  §602.10.

52.     Even more telling; however, while Inspector Ferrara admits on the videotape that the proposed amendment to the PTZR was formulated solely for purposes of "stopping the litigation" initiated by Plaintiff, the Defendants adopted a false preamble to the measure stating it was being done to promote the interests of the Township.

### The October 24, 2017 Board of Trustees Meeting

53.     On October 24, 2017, at a regularly-scheduled meeting of the Trustees, the Board again took up the question of the amendment to §602.10. At such meeting, Trustee Haws reported the Zoning Commission had recommended **DENIAL** of the proposed amendment. Despite such negative recommendation, the Board continued its efforts to adopt Amendment #571-17 by scheduling a public hearing on the matter for November 14, 2017.

### The November 14, 2017 Board of Trustees Meeting

54.     On November 14, 2017, the Board decided to ignore the "DENIAL" recommendation of the Zoning Commission and proceeded to unanimously pass and adopt

Zoning Amendment #571-17.  Trustee Haws, instead of recusing himself because of a potential conflict of interest, participated in the process and voted "YES" on the motion.

55.     Present at the November meeting was Zoning Director Ferrara who spoke and emphasized the Hedge Amendment was sufficient to define the word "hedge" as a "shrub."  Mr. Ferrara's comments clearly demonstrated his intent was to ensure a Christmas or evergreen tree could never again be classified as a "hedge," at least in Plain Township, Ohio.  This, of course, coincided with the Mr. Ferrara's knee-jerk interpretation of the word back in 2016.

56.     Next to speak was Attorney James Mathews who was identified as "legal counsel for the Township." According to the record, Attorney Mathews then "explained that this proposed change is due to a lawsuit and appeal that were both denied."

57.     Attorney Mathews' statements were materially misleading.   As noted above, the Writ Action was filed directly with the Court of Appeals and ultimately dismissed solely on the grounds the Fifth District lacked jurisdiction over the matter because, based on the word of his local Plain Township officials, Steven Armatas did not file an administrative appeal with the BZA in 2016.  Such ruling had nothing to do with the "trees vs. hedge" issue; a question the Court of Appeals never reached.

58.     There is no better evidence that Inspector Ferrara and Trustee Haws grossly misinterpreted the meaning and true scope of the word "hedge" in 2016 than their subsequent remedial measures to redefine the term one year later.

## JURISDICTION AND VENUE

59.     Plaintiff incorporates Paragraphs 1 through 58 above as fully re-written and re-alleged herein.

60.     The United States District Court for the Northern District of Ohio has jurisdiction over this action, pursuant to 28 U.S.C. §1331, and because all of the actions of Defendants alleged herein took place within Stark County, Ohio and Plaintiff's damages are above and beyond the jurisdictional minimum for this Court.

61.     This action is properly venued in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C.  §1391(b) because (a) Plain Township and Stark County, Ohio lie within the judicial district of this Honorable Court, (b) all of the actions of the Defendants in this case issue occurred within Stark County, Ohio; (c) all of the actions of the Plaintiff in this case took place within Stark County, Ohio; and (d) the individual named Defendants live, work and conduct their business in Stark County, Ohio.

## COUNT I

## FRAUD

62.     Plaintiff incorporates paragraphs 1 through 61 above as if fully re-alleged and re-written herein.

63.     As more fully described in paragraphs 11 through 12 above, on or about September 8, 2014, Defendant Thomas Ferrara told Plaintiff (a) he felt "trees and hedges" to be different things, (b) therefore, the Hedge Ordinance was not applicable to Plaintiff's situation, and (c) based on such presupposition he was "not going to do anything about this." At no time subsequent did Mr. Ferrara ever come out to or visit the properties to personally examine and/or take photographs of the hedges.

64.     Inspector Ferrara either knew at the time he made the aforementioned statements to Plaintiff that they were materially false, or thereafter came to know such statements were materially false, and failed to advise Plaintiff of such discovery.

65.     As more fully described in paragraphs 49  through 50 above, Defendant Ferrara can be seen and heard on the videotape of the Zoning Commission meeting admitting in the course of two different exchanges that a row of trees or plants of any kind may constitute the formation of a "hedge."

66.     As such, Mr. Ferrara made misstatements of material fact to Plaintiff, on or about September 8, 2016, which he knew to be false, on which Inspector Ferrara intended for Plaintiff to rely, on which Plaintiff did justifiably rely, and pursuant to which Plaintiff was harmed by his reliance thereon.

67.     Alternatively, Defendant Ferrara omitted to state or disclose a material fact necessary in order to make his previous statements to Plaintiff, in the light of the circumstances under which they were made, not misleading.

68.     In making such false statements, or intentionally omitting to disclose a material fact necessary in order to make his previous statements to Plaintiff not misleading; Defendant Ferrara's actions constituted fraudulent conduct manifestly outside the scope of his employment or official responsibilities as the Zoning Director for Plain Township, and Defendant Ferrara acted with malicious purpose or in bad faith in making such false statements to Plaintiff.

69.     As a direct and proximate cause of the fraudulent statements made to Plaintiff or material omissions kept from Plaintiff by Inspector Ferrara, Plaintiff has suffered damages in excess of $75,000.00 and seeks punitive damages to the extent the law will allow.  Plaintiff will seek leave of court to amend his Complaint to set forth the full amount of damages he has incurred when such amount is ascertained.

## COUNT II

## VIOLATION OF FEDERAL CIVIL RIGHTS

70. Plaintiff incorporates paragraphs 1 through 69 above as if fully re-alleged and re-written herein.

71. In attempting to adopt an Amendment to the Hedge Ordinance in the fall of 2017, Defendants failed to advance a legitimate public interest, and instead undertook such action to advance their own personal interests.

72. Zoning regulations and actions must substantially advance legitimate governmental interests. *Lingle v. Chevron USA, Inc*., 544 U.S. 528, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005) (noting that a zoning action that does not substantially advance a legitimate governmental interest is a substantive due process claim); *A Helping Hand v. Baltimore County*, 515 F.3d 356 (4th Cir. 2008); see also *Clarke v. Warren County Board of Commissioners*, 150 Ohio App. 3d 14, 21, 778 N.E.2d 1116, 1122 (2002) ("there is strong evidence that the [zoning] designation bears no substantial relationship to the purposes proffered by the government").

73. Substantive due process requires that a zoning action not arbitrarily or capriciously affect a person's property. Thus, substantive due process precludes an action that is "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or by any post-deprivation state remedies." *Rucker v. Hartford County*, 946 F.2d 278, 281 (4th Cir. 1991).

74. Since at least 1990, "hedges" (which by its dictionary definition includes trees, shrubs and bushes) in excess of a certain height were prohibited from being grown and cultivated in Plain Township as a barrier between properties.

75. Now, after ***one*** person argued that evergreen trees clearly fall within the parameters of §602.10, the Board of Trustees and the Zoning Department decided, 27 years later,

16

that any shrub or bush in excess of 8 feet tall should continue to be illegal in Plain Township, but 8-foot-plus evergreen trees would now be permitted.

76.     In essence, the Defendants improperly intervened in a dispute between two residents and chose the winner and loser by amending the law to permit the Koberleins to prevail.

77**.**     Based on information and belief, the Plain Township Zoning Department has not bothered to investigate or issue a citation regarding the presence of a shrub or bush over 8 feet in height being grown and cultivated along a property line, even though such shrubs are prevalent throughout the Township.

78.     Such scenario, of course, begs the question of what legitimate government purpose is advanced by now permitting 8-foot-plus evergreen trees to serve as a property barrier, but not similar-sized bushes and shrubs? The answer is ***none***, or at least none that the Plain Township Board of Trustees could articulate.

79.     The situation is akin to Plain Township having a zoning ordinance which allows residents to plant vegetable gardens; only to 30 years later pass an amendment that excludes "cucumbers" from the definition of "vegetable," solely because they wanted to punish a particular resident who likes cucumbers.

80.     In short, the 2017 amendments to §602.10 had nothing to do with advancing some favorable public policy, and everything to do with the efforts of the Defendants to hide their mistakes and harm Plaintiff in the process.

81.     Based on information and belief, Plaintiff hereby alleges that Defendants purposefully took the actions described above for the express and sole purpose of (i) hiding the fact that Inspector Ferrara failed to ever visit the property line in question or examine or take

pictures of the plaint life in question;  (ii) facilitating further damage to Plaintiff's property in

retaliation for his bringing the Writ Action and Fraud Lawsuit against them; and (iii) protecting

their own personal interests by attempting to thwart Plaintiff's outstanding litigation claims

against them at the time.

82.     In taking such actions, Defendants committed acts or omissions manifestly

outside the scope of their employment or official responsibilities as the Members of the Board of

Trustees and Zoning Director for Plain Township, respectively, and Defendants acted with

malicious purpose or in bad faith in engaging in such conduct.

83.     The aforementioned acts all constitute violations of Title 42, U.S.C. §1983 which

federal statute provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress, except that in
> any action brought against a judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was unavailable. For the
> purposes of this section, any Act of Congress applicable exclusively to the
> District of Columbia shall be considered to be a statute of the District of
> Columbia."

84.     Based on information and belief, Plaintiff hereby alleges that Defendants acting

under color of state law deprived Plaintiff of certain rights secured by the Constitution or federal

statutes. The Defendants are deemed "state actors" for purposes of this litigation because they

are endowed by the State with powers or functions governmental in nature, and therefore become

agencies or instrumentalities of the State and subject to its Constitutional limitations.

85.     As a direct and proximate result of the Defendants' violations of Title 42, U.S.C.

§1983 as described in this Count II, Plaintiff has suffered compensatory damages in excess of

$75,000.00, and seeks punitive damages to the extent the law will allow.  Plaintiff will seek leave of court to amend his Complaint to set forth the full amount of damages he has incurred when such amount is ascertained.

## COUNT III

## CIVIL CONSPIRACY

86.     Plaintiff incorporates paragraphs 1 through 85 above as if fully re-alleged and re-written herein.

87.     Based on information and belief, Plaintiff hereby alleges that because the personal objectives and interests of the Plain Township Board of Trustees and Zoning Inspector Ferrara are aligned in hiding the fact that (i) Inspector Ferrara never came out to inspect the property line hosting the vegetation in question, (ii) Inspector Ferrara admitted on videotape that a row of tress could constitute a hedge under Section 602.10, and (iii) one purpose of the proposed amendment to the Hedge Ordinance was to "stop the litigation" initiated by Plaintiff against Trustee Haws and Inspector Ferrara in their personal capacity, the Defendants engaged in a conspiracy to achieve their objectives.

88.     Based on information and belief, Plaintiff hereby alleges that the Defendants with a common objective of hiding the fact (i) Inspector Ferrara never came out to inspect the property line hosting the vegetation in question, (ii) Inspector Ferrara admitted on videotape that a row of tress could constitute a hedge under Section 602.10, and (iii) the sole purpose of the proposed amendment to the Hedge Ordinance was to "stop the litigation," initiated by Plaintiff against Trustee Haws and Inspector Ferrara in their personal capacity, had a meeting of the minds regarding such objective or course of action, and conspired to commit one or more unlawful acts in the furtherance of such objectives.

89.     In taking such actions, Defendants committed acts or omissions manifestly outside the scope of their employment or official responsibilities as the Members of the Board of Trustees and Zoning Director for Plain Township, respectively, and Defendants acted with malicious purpose or in bad faith in engaging in such conduct.

90.     As a direct and proximate result of the Defendants' conspiracy, Plaintiff has suffered compensatory damages in excess of $75,000.00 and seeks punitive damages to the extent the law will allow.  Plaintiff will seek leave of court to amend his Complaint to set forth the full amount of damages he has incurred when such amount is ascertained.

## COUNT IV

## UNCONSTITUTIONAL PASSAGE OF A BILL OF ATTAINDER

91.     Plaintiff incorporates paragraphs 1 through 90 above as if fully re-alleged and re-written herein.

92.     *Black's Law Dictionary* defines "bill of attainder" as a special act of the legislature**,** and not the courts, to inflict a penalty upon certain persons outside the ordinary course of judicial proceedings.  In simpler terms, a bill of attainder aims to keep punitive measures levied against an individual solely within the purview of the judiciary and out of the hands of the executive or legislative branches of government.

93.     In *United States v. Brown*, 381 U.S. 437 (1965), the United States Supreme Court held  "a statute which inflicts its deprivation upon named or described persons or groups constitutes a bill of attainder whether its aim is retributive, punishing past acts, or preventive, discouraging future conduct." *Id.* at syllabus.

94.     By a passing a zoning ordinance amendment whose impact was to favor the property rights of ***one*** Plain Township resident over that of another, continue to allow damage to

accrue to Plaintiff's property, and punish Plaintiff for filing a lawsuit against two of the Defendants,  the Defendants herein violated the U.S. Constitution which forbids Bills of Attainder in Article 1, Sections 9 and 10.

95.     The two main reasons why the U.S. Constitution forbids Bills of Attainder are that the ban: (a) reinforces the separation of powers by forbidding the legislative branch of government from engaging in judicial or executive acts; and (ii) supports the concept of due process, one of the rights attributed by the Constitution to every American citizen.

96.     In the matter at bar, the Defendants facilitated the passage of a law aimed solely to thwart and penalize Mr. Armatas.  At the October 14, 2017 Zoning Commission meeting, Inspector Ferrara is clearly heard on the videotape admitting that a row of trees may well fit within the definition of a hedge, and that the entire purpose behind the amendment to §602.10 was to "stop the litigation," or in other words, to stop Plaintiff.

97.     At another point during the proceedings, Zoning Commissioner John Rambacher openly questioned why the Board of Trustees was seeking to amend the Hedge Ordinance when its prefatory remarks indicated the meaning of the words used therein were already clear.  The reason, of course, is that those words ran counter to Inspector Ferrara's initial interpretation, which forced Defendants to revise history in order to cover up the Zoning Director's and Trustee Haws' own mistakes.

98.     Tellingly, while the "new" Hedge Ordinance *continues* to make any shrubs or bushes in Plain Township that tower over 8 feet in height *illegal*; the Zoning Department has never taken any action to enforce such rule.

99.     As such, the true and sole intent of the Hedge Amendment was to punish Plaintiff by depriving him of the enjoyment of his property.  In other words, while the zoning change

applies *de jure* to all residents, its *de facto* effect was to penalize one person; the Plaintiff herein, thus making it an unconstitutional bill of attainder.

100.    In taking such actions, Defendants committed acts or omissions manifestly outside the scope of their employment or official responsibilities as Members of the Board of Trustees and Zoning Director for Plain Township, respectively, and Defendants acted with malicious purpose or in bad faith in engaging in such conduct.

101.    As a direct and proximate result of the Defendants' passage of a bill of attainder, Plaintiff has suffered compensatory damages in excess of $75,000.00 and seeks punitive damages to the extent the law will allow.  Plaintiff will seek leave of court to amend his Complaint to set forth the full amount of damages he has incurred when such amount is ascertained.

## COUNT IV

## ACTION FOR DECLARATORY JUDGMENT

102.    Plaintiff incorporates paragraphs 1 through 101 above as if fully re-alleged and re-written herein.

103.    Plaintiff hereby seeks a declaratory judgment be issued by this Honorable Court that the amended version of Section 602.10, which was enacted by Defendants on November 14, 2017, be declared invalidly enacted, and/or struck down and declared null and void on the grounds (a) the amendment failed to advance a legitimate public interest, and instead was passed solely to advance the personal interests of the named Defendants; (b) the amendment constitutes an unconstitutional bill of attainder; and (c) the Defendants failed to follow the appropriate ratification procedure under Ohio law.

.

22

104. A declaratory judgment action is appropriate here as such a filing provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations. *Mid-American Fire and Cas. Co. v. Heasley*, 113 Ohio St. 3d 133 (2007), citing *Travelers Indemn. Co. v. Cochrane* (1951), 155 Ohio St. 305, 312.

105. The purpose of a declaratory judgment action is to dispose of "uncertain or disputed obligations quickly and conclusively," and to achieve that end, the declaratory judgment statutes are to be construed "liberally." *Id*., citing *Ohio Farmers Indemn. Co. v. Chames* (1959), 170 Ohio St. 209, 213.

106. As an example, a declaratory judgment action may even be brought before any contract breach. R.C. 2721.04. In fact, declaratory relief is most appropriate where a litigant needs direction from a court <u>before</u> taking future action, as such "direction" will afford the litigant relief from uncertainty or insecurity. See *Household Products, Inc. v. Evans Manufacturing, Inc*., 139 F.Supp. 2d 1235, 1239 (N.D. Ala. 2001).

107. Ohio's Declaratory Judgment Act sets out the types of cases appropriate to declaratory judgment actions before courts of record. R.C. 2721.03 provides: "*** [A]ny person interested under a *** written contract, or other writing constituting a contract or any person whose rights *** are affected by a *** constitutional provision, statute, rule*** [or] contract *** may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule *** [or] contract *** and obtain a declaration of rights, status, or other legal relations under it."

108. Under Ohio law, three elements are necessary to obtain a declaratory judgment as an alternative to other remedies. A petitioner must demonstrate that: (1) a real controversy between adverse parties exists; (2) such controversy is justiciable in character; and (3) speedy

relief is necessary to the preservation of rights which may otherwise be impaired or lost. *Fairview Gen. Hosp. v. Fletcher* (1992), 63 Ohio St.3d 146, 149, citing *Herrick v. Kosydar* (1975), 44 Ohio St.2d 128, 130, and *Buckeye Quality Care Centers, Inc. v. Fletcher* (1988), 48 Ohio App.3d 150, 154.

109.    In this case, Plaintiff has already established that the amendment to the Hedge Ordinance (a) failed to advance a legitimate public interest, and instead was passed solely to advance the personal interests of the named Defendants; (b) constitutes an unconstitutional bill of attainder

110.    In addition to the above, the amendment to the Hedge Ordinance should be stricken because the Defendants failed to follow the appropriate ratification procedure. At its November 14, 2017 meeting, in accordance with R.C. 519.12, the Board of Trustees had three choices in light of the Zoning Commission's vote to ***deny*** the proposed amendment: [A] <u>Adopt</u> the recommendation of the Zoning Commission; [B] <u>Reject</u> the recommendation of the Zoning Commission; or [C] <u>Modify</u> the Zoning Commission's recommendation.

111.    In this case, Defendants appear to have simply repudiated the Zoning Commission's negative recommendation.  Therefore, the Board should have elected to "Deny" the Zoning Commission's outright rejection and let the amendment take effect as originally submitted.

112.    Instead, the Board selected the third option and chose to **MODIFY** the recommendation.  <u>But there was nothing to modify</u>.  One "modifies" something tangible such as a written counter-proposal or suggested changes to the amendment's language.  It makes no sense to modify a **DENIAL** because there is technically no language to alter.

113.    In other words, the Board could have (1) "accepted" the DENIAL of the Zoning Commission, thus allowing the amendment to die; (2) "denied" the DENIAL of the Zoning Commission, thus adopting the amendment as written on September 12, 2017; or (3) modified a counter-proposal submitted by the Zoning Commission. But there was no counter-proposal to consider or modify.

114.    Thus what the Board did, in actuality, was unilaterally adopt a new Amendment #571-17 by dropping certain definitions contained in their original version. Such revised amendment should then have been re-submitted to the Stark County Planning Commission and the Zoning Commission for review and recommendation. By failing to re-submit the revised Hedge Amendment of November 14, 2017, *no amendment* to §602.10 was ever properly passed. Thus, "hedge" still includes Christmas or evergreen trees under the PTZR.

115.    In taking such actions, Defendants committed acts or omissions manifestly outside the scope of their employment or official responsibilities as the Members of the Board of Trustees and Zoning Director for Plain Township, respectively, and Defendants acted with malicious purpose or in bad faith in engaging in such conduct.

## COUNT V

## PUNITIVE DAMAGES

116.    Plaintiff expressly incorporates by reference all of the allegations contained in the preceding paragraphs of the complaint as though expressly rewritten herein and in each additional claim.

117.     Since Defendants' actions have no foundation in law and are intended solely to harm Plaintiff and promote their own personal interests, Defendants' activities constitute willful and malicious conduct against Plaintiff and thus entitle Plaintiff to an award of punitive and

exemplary damages under Ohio law. As Ohio courts have held:  "[T]he purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct."  *Moskovitz v. Mt. Sinai Med. Ctr*. (1994), 69 Ohio St.3d 638, 651.

118.    Further, the focus of any award of punitive damages is the defendant, with consideration of the purpose of punishment and deterrence. *Dardinger v. Anthem Blue Cross & Blue Shield* (2002), 98 Ohio St.3d 77.    Punitive damages are available upon a finding of actual malice.  *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 473.  Actual malice is defined as " '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" *Id.,* quoting *Preston v. Murty* (1987), 32 Ohio St.3d 334,  syllabus.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on each of the causes of action alleged herein for general and compensatory damages, and punitive damages, in such amounts in excess of $75,000 as will be proven at trial, and further prays for an award of reasonable attorneys' fees and costs, together with such other and further relief as may be deemed just, equitable, and proper.

Respectfully submitted,

**/s/   Steven A. Armatas**
Steven A. Armatas, Esq. (0025795)
7690 Bucknell Circle N.W.
North Canton, Ohio 44720
Telephone:   (330) 616-3040
Telefax:      (330) 966-8451
Email:        Starmatas@aol.com
*Counsel for Plaintiff*