IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN A. ARMATAS, | ) | CASE NO. 5:19-cv-02667 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| SCOTT MICHAEL HAWS, *et al*., | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Defendants. | ) | **REPORT & RECOMMENDATION** |

This case and a half dozen related legal proceedings[1] arose from a dispute over the interpretation of a Plain Township, Ohio, zoning ordinance that limits the height of hedges in residential areas to 8 feet (referred to in the Complaint as "the Hedge Ordinance").[2]  Plaintiff Steven A. Armatas ("Plaintiff" or "Armatas") asserted that "hedge" includes a row of trees and, in 2016, asked the Township to enforce the Hedge Ordinance by removing his neighbor's 20-foot high row of evergreen trees growing at his rear property line.  Plain Township authorities denied Armatas' request, contending that the Hedge Ordinance did not apply to trees.  On November 14, 2019, Armatas filed his 6-Count Complaint in this Court against the members of the Plain Township Board of Trustees[3] ("Board of Trustees") and the Zoning Director for Plain Township[4] in their individual capacities ("Defendants").  Doc. 1.

---

[1] In addition to this case, Plaintiff, on his own behalf and/or as counsel, apparently has filed six state court and administrative proceedings.  *See* FN 10 below.

[2] The ordinance is also referred to as "§602.10." Before it was amended in 2017, the ordinance did not define "hedge."

[3] The Board members are Defendants Scott M. Haws ("Haws"), Albert P. Leno II ("Leno"), and John Sabo ("Sabo").

[4] The Zoning Director is Defendant Thomas Ferrara ("Ferrara").

Defendants have filed a motion for judgment on the pleadings (Doc. 17) ("Defendants' Motion), which is fully briefed.  Plaintiff filed an opposition (Doc. 18) and Defendants filed a reply (Doc. 19).  As set forth below, the undersigned recommends that the Court GRANT Defendants' Motion as to Plaintiff's federal law claims and enter Judgment in favor of Defendants on those claims; dismiss the state law declaratory judgment claim without prejudice; and dismiss as moot the claim for punitive damages.

## I. Plaintiff's Complaint

### A. Claims

The Complaint contains the following six claims for relief:

1. Count I – Fraud: alleges that, on or about September 8, 2016,[5] Zoning Director Ferrara made materially false statements regarding "trees and hedges" and the Hedge Ordinance to Armatas or thereafter learned that the statements were materially false and failed to inform Armatas.  Doc. 1, pp. 14-15, ¶¶ 62-69.

2. Count II – Violation of Federal Civil Rights: alleges that, in attempting to adopt an Amendment to the Hedge Ordinance in the fall of 2017,[6] the Defendants did not act to advance a legitimate governmental interest but rather attempted to hide their mistakes and harm Armatas.  Doc 1, pp. 15-19, ¶¶ 70-85.

3. Count III – Civil Conspiracy: alleges that the Board of Trustees' and Ferrara's interests are aligned and they engaged in a conspiracy to hide that: Ferrara never visited Armatas' property to inspect the property line and what was planted there; Ferrara admitted on a videotape that a row of trees could constitute a hedge under the Hedge Ordinance; and that one purpose of the proposed Hedge Ordinance amendment was to "stop the litigation" filed by Plaintiff against Haws and Ferrara.  Doc. 1, pp. 19-20, ¶¶ 86-90.

4. Count IV – Unconstitutional Passage of Bill of Attainder: alleges that Defendants violated the U.S. Constitution (Article I, Sections 9 and 10), which prohibits Bills of Attainder, by passing a zoning ordinance amendment that favors the property

---

[5] In one paragraph of the Complaint, Plaintiff alleges that the statements by Ferrara upon which Count I is premised occurred in September 2014.  Doc. 1, p. 14, ¶ 63.  However, elsewhere in the Complaint, it is alleged that the statements were made in September 2016. Doc. 1, p. 2; Doc. 1, p. 3, ¶ 6; Doc. 1, p. 8, ¶ 34; Doc. 1, p. 15, ¶ 66

[6] The proposed amendment included definitions for "hedge," "shrub," "tree," and "wall."  Doc. 10-9, p. 9 (September 12, 2017, Board of Trustee minutes).  When adopted on November 14, 2017, the definition of "tree" was eliminated from the amendment.  Doc. 10-10, p. 3 (November 14, 2017, Board of Trustee minutes).

rights of one resident over another, continues to allow damage to accrue to Plaintiff's property, and punishes Plaintiff for filing a lawsuit against two of the Defendants,.  Doc. 1, pp. 20-22, ¶¶ 91-101.

5.  Count V[7] – Action for Declaratory Judgment under Ohio's Declaratory Judgment Act: seeks a declaratory judgment  "that the amended version of Section 602.10, which was enacted by Defendants on November 14, 2017, be declared invalidly enacted, and/or struck down and declared null and void on the grounds (a) the amendment failed to advance a legitimate public interest, and instead was passed solely to advance the personal interests of the named Defendants; (b) the amendment constitutes an unconstitutional bill of attainder; and (c) the Defendants failed to follow the appropriate ratification procedure under Ohio law."  Doc. 1, pp. 22-25, ¶¶ 102-115.

6.  Count VI[8] – Punitive Damages: alleges that "Defendants' actions have no foundation in law and are intended solely to harm Plaintiff and promote their own personal interests, Defendants' activities constitute willful and malicious conduct against Plaintiff and thus entitle Plaintiff to an award of punitive and exemplary damages under Ohio law."  Doc. 1, pp. 25-26, ¶¶ 116-118.

**B.  Factual Allegations**[9]

Plaintiff alleges that the Hedge Ordinance – in effect since at least 1990 – provides in part "that all 'fences, walls, or hedges in Plain Township…must meet zoning regulations with regards to height… In all Residential Districts, they…may not exceed 8 feet in height in or along the edge of a rear or side yard. They may be placed up to the property line.'"  Doc. 1, pp. 2-3, ¶¶ 4-5.

On September 8, 2016, Armatas went to the Administrative Offices of Plain Township and spoke with Defendant Ferrara and Ms. Vicki L. Lloyd ("Lloyd"), Zoning Assistant for Plain Township.  Doc. 1, p. 3, ¶ 6.  Armatas identified himself as an attorney and resident of Plain Township.  *Id.* at ¶ 7.  Armatas notified Ferrara and Lloyd that there was "a row of densely-packed, 20-foot high 'evergreen' and/or 'Christmas trees,' [hereinafter "trees"] which had been

---

[7] Count V is mislabeled as Count IV.

[8] Count VI is mislabeled as Count V.

[9] The factual allegations are taken from Plaintiff's complaint and attachments to Defendants' Answer which relate to matters referenced in Plaintiff's complaint.

intentionally planted and cultivated by his neighbors . . . along the rear properly line separating the Armatas property from the adjoining [neighbors'] Residence." *Id.*  Armatas informed Ferrara that it was his belief that the trees violated "the Hedge Ordinance because such artificial barrier constituted a 'fence, wall, or hedge' along a boundary in excess of 8 feet tall." *Id.* at ¶ 8. Armatas and Ferrara engaged in a discussion as to the contents of the Hedge Ordinance and Ferrara reviewed the copy of the Hedge Ordinance that Armatas had brought with him and other materials in his office. Doc. 1, p. 3, ¶¶ 9-10.  Thereafter, Ferrara informed Armatas that he was "not going to do anything about" it because "he felt 'trees and hedges' to be different things[.]" Doc. 1, p. 4, ¶ 11.

Armatas asked Ferrara if there was a procedure for Armatas to "appeal [Ferrara's] 'decision' not to act to another body or person within Plain Township." *Id.* at ¶ 13.  Ferrara informed Armatas that the Plain Township Zoning Commission ("Zoning Commission") and the Board of Zoning Appeals ("BZA") would not have jurisdiction because there was no variance or permit being requested  but, if he wanted to discuss the issue further, he could contact the Board of Trustees. *Id.* at ¶¶ 13-14.  Ferrara was not willing to coordinate a discussion between Armatas and the Board of Trustees but informed Armatas that he could communicate directly with the Board of Trustees if he wanted to discuss the issue with them. *Id.* at ¶ 14.  After Armatas visited Ferrara on September 8, 2016, Ferrara did not "come out to or visit the properties to personally examine and/or take photographs of hedges." *Id.* at ¶ 12.

Later in the afternoon on September 8, 2016, Armatas called Board member Haws and left a voicemail message explaining how he interpreted the Hedge Ordinance and recounting his conversation with Ferrara. Doc. 1, p. 5, ¶ 17.  On September 9, 2016, Haws returned Armatas' call and left a voicemail explaining he had visited the Armatas property earlier and he had

4

concluded that the zoning office was factually correct in what it had relayed to Armatas – the trees had a right to be on the other property and the trees did not meet the criteria of a bush, hedge, wall or fence.  Doc. 1, p. 5, ¶ 18.  Haws also informed Armatas that there was no avenue to appeal through Plain Township so Armatas could only resolve the matter with his neighbor through "mediation, small claims court, or civil litigation[.]"  *Id.* at ¶19.

        1.  <u>State Court Litigation</u>.[10]

On or about October 14, 2016, Armatas filed an Original Writ of Mandamus (the "2016 Writ Action") with the Ohio Fifth District Court of Appeals against Defendants Haws, Leno and Sabo in their official capacities as members of the Board of Trustees of Plain Township and against Defendant Ferrara in his official capacity as Plain Township Zoning Director.  Doc. 1, p. 5, ¶ 20.  In the Writ Action, Armatas requested that the court order the Board of Trustees and Ferrara to enforce the Hedge Ordinance and oversee removal of the trees because, he alleged, they had caused significant damage to Armatas' property over the years.  Doc. 1, pp. 5-6, ¶ 21.  Armatas provided the court with dictionary definitions for the word "hedge" and argued that a "hedge" could include various type of plants, including evergreen trees and bushes "as long as its components [were] in sufficient proximity to form a type of barrier[]" and explained why both evergreen trees and shrubs are effectively "hedges."  Doc. 1, p. 6, ¶¶ 22-23.  Armatas urged the court to turn to the common dictionary definition of "hedge" because the word "hedge" was not defined in the Plain Township Zoning Resolution.  *Id.* at ¶ 24.  In response, the defendants

---

[10] In addition to this case and the two state court cases discussed in the text, it appears that Armatas has filed four additional legal proceedings relating to the Hedge Ordinance and/or trees: (1) a 2018 administrative appeal filed on behalf of his mother, who resides with plaintiff, and which he voluntarily dismissed; (2) 2018 litigation against his neighbors for allegedly failing to comply with the Hedge Ordinance; (3) a 2019 Writ of Mandamus action seeking to compel the Zoning Director to put his 2016 decision in writing; and (4) a writ action to compel the disclosure of legal invoices pertaining to defense of the lawsuits based on the tree dispute.  *See* Doc. 17, p. 8 (Defendants' brief); *see also* Doc. 18, pp. 2-3 (Plaintiff's opposition brief, acknowledging the filing of the various legal proceedings but asserting that the only previously filed action against the members of the Board of Trustees in their individual capacities was the 2017 Fraud Action).

argued that Armatas had failed to exhaust his administrative remedies before filing suit and therefore forfeited his right to seek mandamus.  Doc. 1, p. 7, ¶¶ 28-29.  They argued that Armatas had the right to appeal the Zoning Director's decision to the BZA but did not do so.  *Id.* at ¶ 28.  The Fifth District Court of Appeals dismissed Armatas' writ action on or about May 1, 2017, on the basis that Armatas "has or had an adequate remedy at law by way of utilizing the township's appellate process[.]"  Doc. 1, pp. 7-8, ¶ 30.

On or about June 13, 2017, Armatas filed a lawsuit against Haws and Ferrara in their individual capacities in the Stark County Court of Common Pleas, alleging they committed fraud by falsely claiming on September 8, 2016, and September 9, 2016, that Armatas had no appeal process through Plain Township to challenge Ferrara's decision not to take action with respect to the Hedge Ordinance in relation to the Armatas' neighboring property ("2017 Fraud Action").  Doc. 1, p. 8, ¶ 34.  On or about September 19, 2017, the trial court dismissed the action on motion pursuant to Ohio Civ. R. 12(B)(6) and, on or about April 9, 2018, the court of appeals affirmed, stating in part, that  "'[e]ven assuming, *arguendo*, that [Plain Township] officials Ferrara and/or Haws, <u>maliciously or in bad faith</u>, misinformed appellant that he had no avenue of appeal through Plain Township, such statements constituted erroneous statements of law, upon which appellant was not entitled to rely[.]'"  Doc. 1, p. 9, ¶ 36 (quoting from court of appeals' decision) (alterations and emphasis added in complaint); Doc. 10-7 (trial court judgment entry granting motion to dismiss).

### 2. Ordinance Amendment.

During the pendency of the Stark County Court of Common Pleas case and related appeal discussed above, the Board of Trustees held a regularly scheduled meeting on September 12, 2017, at which Haws proposed an amendment to the Hedge Ordinance (referred to as

"Amendment 571-17," "proposed amendment" or "amendment").  Doc. 1, p. 10, ¶ 42.  The

proposed amendment sought to add definitions to the Hedge Ordinance, including a definition of

"hedge." *Id.* at ¶¶ 42-43.  Plaintiff alleges that, based on the minutes from the September 12,

2017, "the reason for the amendment was that, while the:

> words 'wall' and 'hedge' are clearly understood and applied, when using the plain
> and ordinary meaning of those words…the Board concludes, in its legislative
> judgment, that the inclusion of the specific definitions for the words 'wall' and
> 'hedge' as part of the Zoning Resolution may nevertheless aid in the application of
> Zoning Resolution."

Doc. 1, p. 10, ¶ 43; *see also* Doc. 10-9, pp. 8-9 (September 12, 2017, Board of Trustee minutes).

Further, the minutes reflect that, in the proposed amendment, "hedge" was defined as "A row or

line of closely spaced shrubs, planted and trained in such a way as to form a barrier, screen or

fence, or to mark the boundary of an area."  Doc. 10-9, p. 9.  Plaintiff alleges that "[t]he

amendment, in essence, served to change and limit the meaning of the word 'hedge' from its

commonly-accepted dictionary definition of being 'a thick row of bushes <u>or small trees</u> planted

as a small fence or boundary' to just being a 'shrub.'"  Doc. 1, p. 10, ¶42. (emphasis in original).

The proposed amendment also included definitions for the words "shrub,"[11] "tree," and "wall."

Doc. 10-7, p. 9.  The proposed amendment was passed by the Board of Trustees.  Doc. 1, p. 11, ¶

45; Doc. 10-7, p. 10.

The Zoning Commission held a public hearing on October 14, 2017, [12] to consider the

Board of Trustee's proposed amendment to the Hedge Ordinance.  Doc. 1, p. 11, ¶ 46.  Armatas

states he was not notified of the October 14, 2017, meeting and no notices regarding the meeting

---

[11] Shrub was defined as "A bushy, woody plant generally with several permanent stems instead of a single trunk, thereby distinguishing it from a tree, planted and trained to serve as a landscape feature."  Doc. 10-9, p. 9.

[12] An attachment to Defendants' Answer reflects that the Zoning Commission hearing to consider Amendment #571-17 occurred on October 11, 2017.  Doc. 10-10.

were posted on or near his neighbor's property.  *Id.*  The Zoning Commission debated whether the amendment was necessary and denied the Board of Trustee's recommendation to adopt the amendment.  *Id.* at ¶ 48.  Armatas states he did not attend the meeting but only recently learned of the meeting and watched a videotape of it that was posted to the Plain Township website.  *Id.* at ¶ 47.  Armatas contends that "Defendant Ferrara is seen and heard on the videotape of such Zoning Commission meeting admitting in the course of two different exchanges that a row of trees or plants of any kind may constitute the formation of a 'hedge[]' [and] Defendant Ferrara is also clearly seen and heard on the videotape admitting that the sole purpose of the amendment to the Hedge Ordinance was to 'stop the litigation' initiated by Plaintiff."  Doc. 1, pp. 11-12, ¶ 49.

During an October 24, 2017, regularly scheduled meeting of the Board of Trustees, the proposed amendment to the Hedge Ordinance was considered again.  Doc. 1, p. 12, ¶ 53.  Haws indicated that the Zoning Commission had recommended denial of the amendment.  *Id.*  The Board of Trustees proceeded to schedule a public hearing regarding adoption of Amendment #571-17.  *Id.*  The public hearing was scheduled for November 14, 2017.  *Id.*

At the November 14, 2017, Board of Trustees meeting, the Board, including Haws, unanimously passed and adopted Amendment #571-17.  Doc. 1, pp. 12-13, ¶ 54; Doc. 10-11, p. 3 (November 14, 2017, Board of Trustee minutes).  Plaintiff alleges that Ferrara spoke at the meeting and "emphasized the Hedge Amendment was sufficient to define the word 'hedge' as a 'shrub.'"  Doc. 1, p. 13, ¶ 55; *see also* Doc. 10-11, p. 3 ("Mr. Ferrara stated that by defining what a shrub and hedge are, we have defined what a tree is not, so there is no need for the definition of tree in the zoning code.").  Counsel for Plain Township explained "this proposed change is due to a lawsuit and appeal that were both denied."  *Id.* at ¶ 56; *see also* Doc. 10-11, p. 3.

**II.  Defendants' Motion for Judgment on the Pleadings**

8

In their Motion, Defendants assert that this action is one of multiple lawsuits filed by Plaintiff regarding Ferrara's decision in September 2016 that evergreen trees on Plaintiff's neighbor's property that exceeded 8 feet in height did not constitute a "hedge" under the Hedge Ordinance.  Doc. 17, pp. 7-8, 15.  They argue that res judicata bars Plaintiff from litigating claims previously litigated as well as claims that could have been litigated in the prior proceedings, including the fraud and conspiracy claims as well as the constitutional challenge. Doc. 14, pp. 8-9, 15.

With respect to Plaintiff's challenge to the Plain Township Board of Trustees' passage of a zoning amendment, Defendants assert that said action constituted legislative action and therefore, Defendants Haws, Leno and Sabo, who were trustees when the amendment was adopted, are entitled to absolute legislative immunity.  Doc. 17, pp. 9, 15, 17-20.  Defendants also argue that they are protected by qualified immunity and state law immunity.  *Id.* at pp. 9, 20-23, 27-28.

With respect to Plaintiff's request for declaratory relief based on Ohio law, Defendants contend that the claim is barred by res judicata and lack of injury.  Doc. 17, pp. 9, 15.  Also, they argue that, upon dismissal of the alleged civil rights claim, the Court should decline to exercise discretionary jurisdiction over the state law claim for declaratory relief.  *Id.*

Defendants further argue that, even accepting the allegations in the complaint as true, Plaintiff has failed to state claims upon which relief can be granted.  Doc. 17, pp. 9, 15.

### III.    Law and Analysis

### A.    Standard of review

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Tp. of*

*Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (internal citations omitted). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz*, 592 F.3d at 722 (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007)). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id*. (internal citations omitted). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotations omitted).

### B.     The Court may consider state court proceedings and other public records when ruling on Defendants' motion for judgment on the pleadings

In his opposition brief, Plaintiff suggests that the Court may not consider the various state court and BZA proceedings because complete records of those proceedings have not been submitted or because no certified or exemplified copies have been submitted. Doc. 18, pp. 4-6. However, for the reasons explained below, the Court may consider records relating to those proceedings.

"In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law,*

*LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citing Fed.R.Civ.P. 12(c)).  And, "[t]he court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Id.*; *see also Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F.Supp.2d 914, 925 (N.D. Ohio 2009) ("In addition to consideration of the pleadings, federal courts may also consider materials that are public records or otherwise appropriate for taking judicial notice without converting a Rule 12(b)(6) to a Rule 56 motion.  The same is true with respect to Rule 12(c) motions for judgment on the pleadings.") (internal citations omitted); *Filer v. Polston*, 886 F. Supp. 2d 790, 794 (S.D. Ohio 2012), *aff'd*, 12-3899 (6th Cir. Apr. 24, 2013) (motions for judgment on the pleadings are considered under the same standard for reviewing Rule 12(b)(6) motions and "a court may consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies[]").

Furthermore, courts "may . . . take judicial notice of other court proceedings." *Mango v. City of Columbus*, 2020 WL 5247939, *6 (S.D. Ohio Sept. 3, 2020) (considering motions to dismiss and motions for judgment on the pleadings); *see also Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[W]hen faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

Plaintiff's complaint contains a detailed factual background.  Doc. 1, pp. 2-13, ¶¶ 4-58. In that background, Plaintiff references various state court proceedings involving Plaintiff and Defendants as well as a Zoning Commission meeting and Board of Trustees' meetings.  Doc. 1,

pp. 2-13, ¶¶ 4-58. In addition, Defendants attached various documents to their Answer, including the Ohio Fifth District Court of Appeals' opinion dismissing the 2016 Writ Action (Doc. 10-4); the trial court judgment entry from the 2017 Fraud Action (Doc. 10-7); the court of appeals opinion regarding the 2017 Fraud Action (Doc. 10-8); Board of Trustees' meeting minutes (Doc. 10-9 (September 12, 2017), Doc. 10-11 (November 14, 2017)); and the October 11, 2017, Zoning Commission recommendation.

The Court may consider the state court and other public records attached to Defendants' Answer. *Dudek*, 702 F. Supp. 2d at 832 (indicating that, when ruling on a motion for judgment on the pleadings, courts can consider documents attached to, incorporated by, or referred to in the pleadings; public records; and matters of which the court may take judicial notice); *Mango*, 2020 WL 5247939, *6 (Courts "may . . . take judicial notice of other court proceedings."); *Buck*, 597 F.3d at 816 (indicating that a court may take judicial notice of other court proceedings without converting a Rule 12(b)(6) to a motion for summary judgment).

### C. Res Judicata

When a court considers "[t]he preclusive effect of a state court judgment in a subsequent federal lawsuit[,]" a federal court is to "refer to the preclusion law of the State in which the judgment was rendered[,]" not the federal court's own res judicata rules. *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 379-380 (1985); *Snyder v. All-Pak*, 2006 WL 2993420, * (N.D. Ohio Oct. 29, 2006) (relying on *Marrese* when applying Ohio law to determine preclusive effect of a prior Ohio state court judgment). Thus, Ohio's res judicata law applies in determining whether state court proceedings have a preclusive effect in this federal case. "The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v.*

12

*Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995). "The former makes 'an existing final judgment or decree between the parties to litigation ... conclusive as to all claims which were or might have been litigated in a first lawsuit[.]'" *Carroll v. City of Cleveland*, 522 F. App'x 299, 303 (6th Cir. 2013) (internal citations omitted). "[T]he latter 'precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action.'" *Id.* (internal citation omitted).

In this case, Defendants contend that Plaintiff's fraud action is barred by claim preclusion. The Ohio Supreme Court has stated the following regarding claim preclusion in Ohio: "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Id.* at 229; *see also Snyder*, 2006 WL 2993420, * 2 (quoting *Grava*).

There are four elements to claim preclusion in Ohio: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *In re Fordu*, 201 F.3d 693, 703-704 (6th Cir. 1999). "The doctrine of res judicata renders the judgment in the first case binding as to all issues which *were* or *could have* been litigated." *Bench Signs Unlimited v. Jackson Twp. Zoning Dep't.*, 1996 U.S. Dist. LEXIS 22975, *14 (N.D. Ohio Nov. 18, 1996) (emphasis supplied) (finding that the constitutional claim that plaintiff did not raise in state court but sought to raise in a subsequent federal action was barred by res judicata), *aff'd*, 1998 U.S. App. LEXIS 16020, 142 F.3d 431 (6th Cir. Mar. 4, 1998).

### D.    Count I – Fraud Claim -- Alleged against Defendant Ferrara

13

In Count I, Plaintiff alleges a fraud claim against Defendant Ferrara.  Doc. 1, pp. 14-15, ¶¶ 62-69.  He asserts that, on or about September 8, 2016, Ferrara made materially false statements regarding "trees and hedges" and the Hedge Ordinance to Armatas or thereafter learned that the statements were materially false and failed to inform Armatas.  Doc. 1, pp. 14-15, ¶¶ 62-69.

Defendants argue that claim preclusion bars Plaintiff's fraud claim and it should therefore be dismissed.  Doc. 17, pp. 15-17; Doc. 19, pp. 4-7.  Plaintiff's fraud claim is asserted against Defendant Ferrara only.  *See generally* Doc. 1, pp. 14-15, ¶¶ 62-69; Doc. 1, p. 15, ¶ 69 ("As a direct and proximate cause of the fraudulent statements made to Plaintiff or material omissions kept from Plaintiff by . . . Ferrara, Plaintiff has suffered damages . . . .").  Defendants contend that the fraud allegation against Ferrara in this action arises out of the same facts upon which the claims in the 2017 Fraud Action were based.

Plaintiff presents procedural arguments in opposition to Defendants' res judicata argument, contending that Defendants have not filed a proper or sufficient record; that, when matters outside the pleadings are presented, the court is required to treat the motion as a summary judgment motion; and that it is not proper for Defendants to raise res judicata in a motion for judgment on the pleadings.  Doc. 18, pp. 4-5.

Plaintiff's procedural arguments are without merit.  First, as discussed above, Defendants attached to their Answer copies of various documents that pertain to matters referred to in Plaintiff's Complaint, e.g., the opinion dismissing the 2016 Writ Action (Doc. 10-4); the trial court judgment entry from the 2017 Fraud Action (Doc. 10-7); the court of appeals opinion regarding the 2017 Fraud Action (Doc. 10-8); Board of Trustees' meeting minutes (Doc. 10-9 (September 12, 2017), Doc. 10-11 (November 14, 2017)); and the October 11, 2017, Zoning

14

Commission recommendation.   Second, when presented with a motion for judgment on the pleadings, the Court may consider state court and other public records and need not convert the motion to one for summary judgment.  *Dudek*, 702 F. Supp. 2d at 832 (indicating that, when ruling on a motion for judgment on the pleadings, a court may consider documents attached to, incorporated by, or referred to in the pleadings; public records; and matters of which the court may take judicial notice); *Mango*, 2020 WL 5247939, *6 (Courts "may . . . take judicial notice of other court proceedings."); *Buck*, 597 F.3d at 816 (indicating that a court may take judicial notice of other court proceedings without converting a Rule 12(b)(6) to a motion for summary judgment).  Third, Plaintiff relies on out-of-circuit cases to argue that Defendants cannot raise res judicata in their motion for judgment on the pleadings (Doc. 18, pp. 4-5) yet cases within this circuit demonstrate that res judicata is properly raised in a motion for judgment on the pleading.  *See e.g. Sullen v. Bray*, 2017 U.S. Dist. LEXIS 175207, *12-13 (N.D. Ohio Oct. 23, 2017); *Moore v. Hiram Twp*., 2020 U.S. Dist. LEXIS 16140 (N.D. Ohio Jan. 31, 2020).

Plaintiff also argues that Defendants fail to satisfy elements necessary to establish res judicata.  Doc. 18, pp. 7-10.   He contends that the parties are not "completely identical" because Leno and Sabo were not parties to the 2017 Fraud Action; the fraud allegations in this case do not arise out of the same facts that formed the basis for the 2017 Fraud Action; and res judicata is inapplicable to erroneous decisions of inferior courts.  *Id.*  For the reasons discussed below, the undersigned finds that each of the four elements is satisfied and therefore the Court should dismiss Plaintiff's fraud claim (Count I) asserted against Ferrara based on res judicata.

*First Element*

15

The first element required for claim preclusion – a prior final, valid decision on the merits by a court of competent jurisdiction – is satisfied in this case.  In the 2017 Fraud Action, Armatas alleged that Ferrara and Haws falsely represented that he had no avenue to appeal Ferrara's conclusion that the Hedge Ordinance did not apply to trees because trees and hedges were different.  Doc. 1, p. 8, ¶ 34; Doc. 10-7, p. 3.  The trial court granted the motion to dismiss filed by Haws and Ferrara, concluding that Armatas had failed to state a claim upon which relief could be granted.  Doc. 10-7.  The court stated that "[b]ecause the allegations contained in Plaintiff's Complaint are representations of law, which are opinions, they cannot form the basis of a fraud claim [and] [a]dditionally, Plaintiff has not sufficiently pled reasonable reliance."  Doc. 10-7, p. 6.  The court of appeals affirmed the trial court's decision.  Doc. 10-8; *Armatas v. Haws*, 110 N.E.2d 759 (Ohio App. Ct. Apr. 9, 2018).

"[A] dismissal for failure to state a claim is considered an adjudication on the merits with full preclusive effect in later litigation[.]"  *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 Fed. App. 409, 411 (6th Cir. Apr. 8, 2013); *see also Wyatt v. JP Morgan Chase Bank*, 2016 U.S. App. LEXIS 23995, *4 (6th Cir. Apr. 6, 2016) (citing *Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 (1981) ("Dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' for preclusive purposes.").  Plaintiff seeks to collaterally attack the state court decisions dismissing his 2017 Fraud Action by challenging the correctness of those decisions and arguing that "res judicata is inapplicable to the erroneous judgments and decisions of inferior courts."  Doc. 18, p. 8.  Plaintiff asserts, "[F]ederal judges are not required to memorialize the bad legal decisions of state courts by automatically anointing them as gospel for purposes of res judicata or collateral estoppel."  Doc. 18, p. 8.  He argues that "this Court is free to take into account that the prior state courts' findings were erroneous because the Ohio Supreme Court, as well as the U.S.

Supreme Court, <u>explicitly</u> permit it to do so."  Doc. 18, p. 10 (footnote omitted) (emphasis supplied).  He also argues that state court judges in Ohio "by necessity, are politicians[]" and "may feel beholden to those who supported them[.]" Doc. 18, p. 10.

The Ohio and U.S. Supreme Court cases relied upon by Armatas to argue that this Court should determine whether the state courts properly decided the 2017 Fraud Action are inapposite and do not explicitly require courts to assess the correctness of a prior decision before applying res judicata to bar a claim.  The first case, *Goodson v. McDonough Power Equip. Co., Inc.*, 2 Ohio St. 3d 193, 443 N.E.2d 978 (1983), (Doc. 18, pp. 9-10), did not involve claim preclusion. The court in *Goodson* considered whether mutuality of parties was required in order for issue preclusion to apply.  *Goodson*, 2 Ohio St. 3d at 202-203.  In the second case, *Montana v. United States*, 440 U.S. 147, 164, n. 11, 99 S.Ct. 970, 979, n. 11, 59 L.E.2d 210 (1979), which Plaintiff cites in a footnote (Doc. 18, p. 10, n. 9), the Supreme Court concluded that the federal government was precluded from relitigating a challenge it had raised and that was decided in state court.  The Supreme Court observed that "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana*, 440 U.S. 147, 163-164, n. 11.  However, the Supreme Court did not conclude that courts are required to assess the correctness of a prior judicial decision before applying claim preclusion.  Further, while Plaintiff asserts that the state trial court in his case granted the motion to dismiss without allowing discovery (Doc. 18, p. 8) he has not shown that discovery was required prior to a decision being rendered on the motion to dismiss, nor has he shown reason to doubt that the procedures followed in the 2017 Fraud Action were fair and adequate.

For the reasons discussed, the undersigned finds that the first element of claim preclusion is satisfied.  Moreover, the undersigned finds Armatas' suggestion that the state court trial and

appellate court decisions may be disregarded because the state court judges who rendered the decisions are elected is wholly unsupported and unwarranted.

### Second Element

The second element of claim preclusion – that the second action involves the same parties, or their privies, as the first – is satisfied. Plaintiff contends otherwise and argues that claim preclusion cannot apply because "the parties are not completely identical since Messrs. Leno and Sabo were not named as defendants in the 2017 lawsuit." Doc. 18, p. 7. However, the fraud claim in this case is against Defendant Ferrara only and there is no dispute that Plaintiff and Ferrara were parties to the 2017 Fraud Action. Doc. 1, p. 8, ¶ 34. Thus, the undersigned finds that the second element is satisfied as to Defendant Ferrara.

### Third Element

The third element required for claim preclusion is that the second action raises claims that were or could have been litigated in the first action – is satisfied. Plaintiff's fraud claim against Ferrara arises from the same conversation that occurred between Armatas and Ferrara on September 8, 2016, regarding the Hedge Ordinance. Doc. 1, pp. 3-4, ¶¶ 6-13, 63; Doc. 10-5, pp. 3-4, ¶¶ 5-9. Armatas has not clearly addressed the third element and he has not shown that the "new" fraud claim in this action could not have been brought in the 2017 Fraud Action. Thus, the undersigned finds that the third element is satisfied as to the fraud claim asserted against Ferrara.

### Fourth Element

The fourth element – that the second action arises out of the transaction or occurrence that was the subject matter of the previous action – is satisfied. Armatas contends that his fraud claim in this case does not arise out of the same facts as the 2017 case because, in the earlier

18

case, the alleged fraud was that Ferrara "lied . . . about the BZA having no authority to review his 'oral' decision on the 'trees v. hedge' issue."  Doc. 18, p. 7.  However, as discussed above, Ferrara's fraud claim in this action arises from the same September 8, 2016, conversation between Armatas and Ferrara that was the basis of the earlier case.  Armatas attempts to avoid application of claim preclusion to his fraud claim by arguing that he is also seeking to hold Ferrara liable for participating in a conspiracy to harm him and retaliate against him.  Doc. 18, p. 7.  However, the conspiracy and fraud claims are in separate Counts of the Complaint.  Armatas has not shown that assertion of other claims in this action is a basis upon which claim preclusion should not apply to the fraud claim that is based on statements alleged to have been made by Ferrara during the same September 8, 2016, conversation that formed the basis of the fraud claim asserted in the 2017 Fraud Action.  For the reasons discussed, the undersigned finds that the fourth element has been satisfied.

In light of the foregoing, the undersigned recommends that the Court GRANT Defendants' Motion with respect to Defendant Ferrara on the basis of res judicata as to Count I – Fraud.

### E.        Count II – Violation of Federal Civil Rights – Alleged against all Defendants

In Count II, entitled Violation of Federal Civil Rights, Plaintiff asserts a substantive due process claim premised on alleged violations of 42 U.S.C. § 1983.  Doc. 1, pp. 15-19, ¶¶ 70-85. In his opposition to Defendants' Motion, Plaintiff contends that he also has a procedural due process claim under the Fourteenth Amendment and a First Amendment retaliation claim because the Board of Trustees retaliated again him for filing legal actions relating to his alleged damages.  Doc. 18, pp. 21-22.  In his opposition he asserted that he planned to seek leave of court to amend his complaint to set forth his constitutional claims "in a more detailed and orderly

manner." *Id.*  Approximately two months after filing his opposition brief, Armatas sought leave to amend his complaint to, inter alia,

> [add] three causes of action under 42 U.S.C. §1983 stemming from the violation of his Constitutional rights of Free Speech under the First Amendment, Equal Protection Under the Law, and Procedural Due Process under the 14th Amendment, to go along with his previously-stated Substantive Due Process claim.  Such claims are being added to address defense counsel's concern over lack of specificity and thus elaborate upon what Constitutional provisions and/or federal laws Plaintiff believes Defendants have infringed.

Doc. 20, p. 3.  The undersigned considered and addressed Plaintiff's motion for leave to amend in a report and recommendation.  Doc. 30.  The undersigned recommended that the Court deny the request, including the request to add the three new constitutional claims, i.e., First Amendment, Equal Protection, and Procedural Due Process.  Doc. 30, pp. 6-7.  In light of the foregoing recommendation, the only constitutional claim considered herein is the substantive due process claim.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Gray v. City of Detroit*, 399 F.3d 612, 615 (6th Cir. 2005) (quoting *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L.Ed.2d 40 (1988)); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) ("To establish a claim under 42 U.S.C. § 1983, a plaintiff must 'identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law.'") (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).

Defendants argue that they are entitled to qualified immunity as to the alleged constitutional violation.  Doc. 17, pp. 20-23.  "[Q]ualified immunity shields officials from civil liability if their conduct 'does not violate clearly established statutory or constitutional rights of

20

which a reasonable person would have known.'" *Richmond v. Huq*, 885 F.3d 928, 947 (6th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The two steps of the qualified immunity analysis may be addressed in any order but, if both steps are not satisfied, then qualified immunity shields an individual government officer from civil damages. *Courtright v. City of Battlecreek*, 839 F.3d 513, 518 (6th Cir. 2016). The burden to show that a defendant is not entitled to qualified immunity rests with the Plaintiff. *Chappel v. City of Cleveland*, 585 F. 3d 901, 907 (6th Cir. 2009). "If [a] plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, [he] will have failed to carry [his] burden." *Id.* "Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Id.*

The Sixth Circuit "has recognized that a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest. *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707 (6th Cir. 2005). "[A] regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 542, 125 S. Ct. 2074, 2083, 161 L. Ed. 2d 876 (2005). "To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists and (2) that constitutionally protected interest has been deprived through arbitrary and capricious action." *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002).

Armatas alleges that, "[i]n attempting to adopt an Amendment to the Hedge Ordinance in the fall of 2017, Defendants failed to advance a legitimate public interest, and instead undertook such action to advance their own personal interests[,]" Doc 1, p. 16, ¶ 71, and "harm Plaintiff in

21

the process." Doc. 1, p. 16, ¶ 80.  In his opposition brief, Plaintiff asserts that his substantive due process claim concerns his backyard, which he contends Defendants have damaged "by their selfish or corrupt motives." Doc. 18, p. 20.  However, his allegations are conclusory and insufficient to establish violation of a federal constitutional right.  *See Twombly*, 550 U.S. at 555 ("A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted).  He provides no legal authority establishing a federal constitutional right to a particular zoning ordinance or a federal constitutional right not to have trees in excess of eight feet on his *neighboring* property.  Not only has he failed to sufficiently allege the federal constitutional right that has been violated, he fails to sufficiently allege the damage caused by the alleged constitutional violation.

Since Plaintiff has not sufficiently alleged a constitutionally protected property interest, the undersigned finds that Plaintiff has failed to state a substantive due process claim in the context of zoning regulations.  *See Tri-Corp. Mgmt. Co., supra*. ("To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists and . . . ).  Furthermore, without a constitutionally protected property interest, he cannot establish that the Defendants' actions amounted to a constitutional violation or satisfy his burden of showing that Defendants are not entitled to qualified immunity.

For the reasons discussed herein, the undersigned recommends that the Court GRANT Defendants' Motion with respect to all Defendants as to Count II – Violation of Federal Civil Rights based on qualified immunity.[13]

### F.    Count III – Civil Conspiracy -- Alleged against all Defendants

In Count III, Plaintiff asserts that Defendants engaged in a civil conspiracy.  Doc. 1, pp. 19-20, ¶¶ 86-90.  He alleges that the Board of Trustees' and Ferrara's interests are aligned and they engaged in a conspiracy to hide the facts that: Ferrara never visited Armatas' property to inspect the property line and what was planted there; Ferrara admitted on a videotape that a row of trees could constitute a hedge under the Hedge Ordinance; and that one purpose of the proposed Hedge Ordinance amendment was to "stop the litigation" filed by Plaintiff against Haws and Ferrara.  Doc. 1, pp. 19-20, ¶¶ 86-90.

In their Motion, Defendants argue that Plaintiff has failed to state a claim for civil conspiracy because he has not identified whether the claim is being asserted under Ohio or Federal law and the allegations pled fail to state a claim for relief under either Ohio or Federal law.  Doc. 17, pp. 25-27.

"To state a claim for civil conspiracy under § 1983, a plaintiff must allege that: '(1) a 'single plan' existed, (2) [the defendants] 'shared in the general conspiratorial objective' to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury [to plaintiff].'" Miller v. Meyer, 2014 U.S. Dist. LEXIS 150871, *28 (S.D. Ohio Oct. 23, 2014) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks*, 771 F.2d at 944)). "A plaintiff also

---

[13] Defendants also argue that Count II should be dismissed based on absolute legislative immunity.  Doc. 17, pp. 17-20.  Since Count II is subject to dismissal based on qualified immunity it is not necessary to address this alternative argument for dismissal.

must allege an actual deprivation of rights, as 'the gist of the section 1983 cause of action is the deprivation and not the conspiracy.'" *Id. (*quoting *Stone v. Holzberger*, 807 F. Supp. 1325, 1340 (S.D. Ohio 1992) (quoting *Landrigan v. Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) (brackets omitted)).

Under Ohio law, "[t]he elements of a civil conspiracy claim are: (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself." *Ogle v. Hocking Cty.*, 2013-Ohio-597, ¶ 14, 2013 WL 658254, * 3 (Ohio App. Ct. Jan. 31, 2013) (quoting *Cook v. Kudlacz,* 974 N.E.2d 706, 2012–Ohio–2999, ¶ 90 (7th Dist.), quoting *State ex rel. Fatur v. Eastlake,* 11th Dist. No.2009–L–037, 2010–Ohio–1448, ¶ 45) (internal quotations omitted).

Armatas' response to Defendants' argument regarding his civil conspiracy claim is contained in the following paragraph:

> Plaintiff has also sufficiently pled all the elements of an illegal civil conspiracy. Plaintiff has alleged Defendants held private and public meetings wherein they devised a plan to enact a zoning amendment that would change a 30-year old law to permit trees over 8 feet tall to serve as a barrier between properties, but not similarly-sized bushes and shrubs. Such efforts were initiated solely to harm Plaintiff and to "stop the litigation" against Defendants. The passage of the new law which ensured the continued destruction of Plaintiff's property, yet was never to be enforced against anyone, constitutes the necessary overt act. Further, Plaintiff has clearly alleged an actual deprivation of his rights since he has filed a complaint in Federal Court asserting numerous civil rights violations.

Doc. 18, p. 23.  Armatas fails to state whether his claim is a Federal or state law claim. Furthermore, he has not sufficiently alleged how passage of the "new law" has damaged his property or how it has deprived him of a constitutionally or federally protected right.  In light of the foregoing, the undersigned finds that Plaintiff has failed to state an actionable claim for civil

24

conspiracy and therefore recommends that the Court GRANT Defendants' Motion with respect to all Defendants as to Count III – Civil Conspiracy.[14]

### G.    Count IV – Unconstitutional Passage of Bill of Attainder – Alleged against all Defendants

In Count IV, Plaintiff alleges that the Defendants have violated the U.S. Constitution, which prohibits Bills of Attainder (Article I, Sections 9 and 10), by passing a zoning ordinance amendment that favors the property rights of one resident over another, continues to allow damage to accrue to Plaintiff's property, and punishes Plaintiff for filing a lawsuit against two of the Defendants.  Doc. 1, pp. 20-22, ¶¶ 91-101.

Defendants argue that Armatas' Complaint fails to state a claim for bill of attainder.  Doc. 17, pp. 23-25.

"The Supreme Court has defined a bill of attainder as 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *Wilson v. Yaklich*, 148 F.3d 596, 605–606 (6th Cir. 1998) (quoting *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group,* 468 U.S. 841, 846–47, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984)).  There are "three essential elements to a bill of attainder: 'specificity ..., punishment, and lack of a judicial trial.'" *Id.* (citing *Zilich v. Longo,* 34 F.3d 359, 362 (6th Cir.1994) (quoting *Selective Serv. Sys.,* 468 U.S. at 847, 104 S.Ct. 3348)).  The Supreme Court has identified "three necessary inquiries" when assessing whether the legislation "inflicts forbidden punishment[.]"  *Selective Serv. Sys.*, 468 U.S. at 852.  They are:

> (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative

---

[14]Defendants also argue that, even if Plaintiff's claim were sufficiently pled, a federal civil conspiracy claim would be barred by absolute legislative immunity and qualified immunity (Doc. 17, pp. 20, 27) and a state law civil conspiracy claim would be barred by state law immunity (Doc. 17, p. 27-28).  Since Count III is subject to dismissal for failure to state a claim for relief it is not necessary to address these alternative grounds for dismissal.

purposes; and (3) whether the legislative record evinces a congressional intent to
punish.

*Id.* (citing *Nixon v. Administrator of General Services*, 433 U.S. 425, 473, 475-476, 478 (1977)
(internal quotations omitted). "Forbidden legislative punishment is not involved merely because
the [legislation] imposes burdensome consequences." *Nixon*, 433 U.S. at 472. Punishments that
have historically been prohibited by bills of attainder include "imprisonment, banishment, . . .
punitive confiscation of property . . . and legislative bars to participation by individuals or groups
in specific employments or professions." *Selective Serv. Sys.*, 468 U.S. at 852.

The Hedge Ordinance amendment added definitions of "hedge" and "shrub" and
continued to prohibit shrubs or bushes that exceed 8 feet in height. Doc. 1, pp. 10, 12-13, 21 ¶¶
42, 54-55, 98.

Plaintiff's complaint fails to state a bill of attainder claim. The amended ordinance does
not apply solely to Plaintiff or solely to Plaintiff's property. It applies to all residents of Plain
Township. Armatas acknowledges this, however, he contends that the effect of the amendment
was to penalize only him. Doc. 1, pp. 21-22, ¶ 99; Doc. 18, p. 22. His argument is not sufficient
to satisfy the first element or establish that the amendment constitutes a bill of attainder. *See
e.g.*, *Oxford Bank & Trust and Fifth Ave. Property Management v. Village of LaGrange*, 879
F.Supp.2d 954, 968 (N.D. Ill. 2012) (When rejecting an equal protection challenge to a zoning
ordinance, the court explained that "[t]he problem with [the plaintiffs'] argument is that the
zoning amendment did not apply only to the plaintiffs, but equally to all property owners in the
Village. *The injury they claim stems from the passage of a generally applicable zoning
ordinance, not the civil equivalent of a bill of attainder applicable only to the plaintiffs* . . . [and]
[a] zoning change that is generally applicable prospectively, but affects a single landowner at the
time of passage, is not evidence of individual discrimination.") (emphasis supplied).

26

Additionally, to establish a bill of attainder, it must be shown that the amendment "legislatively determines guilt and inflicts punishment[.]"  *Wilson*, 148 F.3d at 605–606; *see also Zilich*, 34 F.3d at 362 (rejecting a claim that an ordinance that authorized a law director to seek collection of plaintiff's salary was a bill of attainder because the court found that it was not punitive "within the historical meaning of legislative punishment[]").  Armatas does not counter Defendants' legal authority indicating that a zoning ordinance does not determine guilt or innocence or inflict punishment (Doc. 17, p. 25, citing *Centerfold Club, Inc. v. City of St. Petersburg*, 969 F.Supp. 1288, 1309 (M.D. Fla. 1997) (When the court rejected a bill of attainder claim brought by owners of adult entertainment establishments challenging the constitutionality of a city ordinance that limited the locations of adult entertainment establishments, it reasoned that "[t]he Ordinance is a zoning ordinance.  It does not legislatively determine the guilt or innocence of a person and/or inflict punishment.") and *WMX Techs. v. Gasconade County*, 105 F.3d 1195, 1202 (8th Cir. 1996) (finding an ordinance regulating landfills that plaintiff argued would limit its ability to operate its landfill as intended could not be deemed a bill of attainder because it did not single plaintiff out and was not punitive in nature)).

Moreover, Armatas has failed to sufficiently allege or demonstrate that the amendment at issue determines his guilt or inflicts punishment.  He alleges the "intent of the Hedge Amendment was to punish Plaintiff by depriving him of the enjoyment of his property."  Doc. 1, p. 21, ¶ 99.  However, he admits his "property has not been confiscated *per se*" (Doc. 18, p. 23) and he fails to cite legal authority to support a claim that loss of enjoyment of property satisfies the punishment element of a bill of attainder.  Furthermore, he fails to explain how the alleged failure of the Township to enforce the amended ordinance against anyone establishes his claim that the amendment has "disadvantaged no one other than Plaintiff" (Doc. 18, pp. 22-23) and

therefore constitutes a bill of attainder.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

As explained herein, the amendment is not specific to Armatas but rather applies to all residents.  Furthermore, the amendment does not impose a punishment upon Armatas.  Thus, Armatas has not stated an actionable claim for unconstitutional bill of attainder.  Accordingly, the undersigned recommends that the Court GRANT Defendant's Motion as to Count IV – Unconstitutional Passage of Bill of Attainder as to all Defendants.

### H.  Count V – Action for Declaratory Judgment under Ohio law

In Count V, Plaintiff seeks a declaratory judgment  "that the amended version of Section 602.10, which was enacted by Defendants on November 14, 2017, be declared invalidly enacted, and/or struck down and declared null and void on the grounds (a) the amendment failed to advance a legitimate public interest, and instead was passed solely to advance the personal interests of the named Defendants; (b) the amendment constitutes an unconstitutional bill of attainder; and (c) the Defendants failed to follow the appropriate ratification procedure under Ohio law." Doc. 1, pp. 22-25, ¶¶ 102-115.

In light of the undersigned's recommendations to dismiss the federal claims asserted in this case, the undersigned recommends that the Court GRANT Defendants' request to decline to exercise jurisdiction over the state law declaratory judgment claim asserted in Count V.

### I.  Count VI – Punitive Damages

28

In Count VI, Plaintiff seeks punitive damages, alleging that "Defendants' actions have no foundation in law and are intended solely to harm Plaintiff and promote their own personal interests, Defendants' activities constitute willful and malicious conduct against Plaintiff and thus entitle Plaintiff to an award of punitive and exemplary damages under Ohio law."  Doc. 1, pp. 25-26, ¶¶ 116-118.

In light of the undersigned's recommendations that the Court dismiss Counts I through V, the undersigned recommends that the Court DISMISS as MOOT Count VI, which seeks punitive damages.

IV.     **Recommendation**

For the reasons explained herein, the undersigned recommends that the Court GRANT Defendants' Motion for Judgment on the Pleadings (Doc. 17) as to Plaintiff's federal law claims and enter Judgment in favor of Defendants on those claims; dismiss Plaintiff's state law declaratory judgment claim without prejudice; and dismiss as moot the Plaintiff's claim for punitive damages.


Dated:  January 4, 2021

*/s/ Kathleen B. Burke*
_____
Kathleen B. Burke
United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).